IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GAYLE W.,                          §
                                   §
            Plaintiff,             §
                                   §
V.                                 §          No. 3:18-cv-1241-BN
                                   §
                                   §
ANDREW SAUL, Commissioner of       §
Social Security,                   §
                                   §
            Defendant.             §

## MEMORANDUM OPINION AND ORDER

Plaintiff Gayle W. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is affirmed.

## Background

Plaintiff alleges that she is disabled as a result of high blood pressure, hypertension, and carpal tunnel syndrome. After her application for disability insurance benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on December 1, 2016. *See* Dkt. No. 12-1 at 47-90. At the time of the hearing, Plaintiff was 60 years old. She has some college, and has past work experience as an eligibility worker, employment and claims aide, counselor, and general clerk. Plaintiff has not engaged in substantial gainful activity since March 1, 2014.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See id.* at 28-42. Although the medical evidence established that Plaintiff suffered from diabetes mellitus, hyperlipidemia, hypertension, carpal tunnel syndrome, parathyroid disease, obesity, disorders of the cervical and lumbar spine, and depression, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of light work, but could not return to her past relevant employment. Given her age, education, and exertional capacity for light work, and relying on a vocational expert's testimony, the ALJ found that Plaintiff has transferable skills and is capable of making a successful adjustment to working as a case aide or park aide -- jobs that exist in significant numbers in the national economy.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

In a single ground for relief, Plaintiff contends that the assessment of her residual functional capacity ("RFC") is not supported by substantial evidence and results from reversible legal error.

The Court determines that the hearing decision is affirmed in all respects.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014);

*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to consider all of the evidence, and, specifically, failed to accommodate all restrictions supported by the record. According to Plaintiff, the record demonstrates that her impairments are significantly more limiting than accounted for by the ALJ and that her limitations restrict her lifting, carrying, standing, walking, and manipulative and postural functions to such an extent that she is unable to perform light work on a sustained basis.

## I.   The ALJ's RFC finding

When determining a claimant's RFC, the ALJ will consider the limiting effects of all of the claimant's impairments, even those that are not severe. *See* 20 C.F.R. § 404.1545(e). The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC refers to the most that a claimant is able to do despite her physical and mental limitations. *See* 20 C.F.R. §§ 404.1545(a); 416.945(a). The RFC is considered by the ALJ, along with the claimant's age, education, and work experience, in determining whether a claimant can work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ found that Plaintiff retained the ability to perform a limited range of light work. Specifically, the ALJ found that Plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently; can walk or stand for a total of six hours in an eight-hour workday; can sit for a total of six hours in an eight-hour workday; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; can frequently finger with the bilateral upper extremities; can occasionally handle with the bilateral upper extremities; and can perform detailed but not complex tasks. *See* Dkt. No. 12-1 at 34; *see also* 20 C.F.R. § 404.1567(b); SSR 83-10 (S.S.A.), 1983 WL 31251, at *5 (1983).

In the narrative section of the ALJ's Decision regarding the RFC finding, the ALJ discussed the medical evidence and opinions from treating and consulting physicians, as follows:

On April 26, 2006, Raymond K. Zarins, M.D., performed an Orthopedic Independent Medical Evaluation. *See* Dkt. No. 12-1 at 35, 289-93. Plaintiff reported an on-the-job injury to her cervical spine and bilateral wrists and hands in June 2000. Dr. Zaris diagnosed a chronic sprain/strain of the cervical spine, status postoperative left carpal release, and bilateral carpal tunnel syndrome. Dr. Zaris opined that Plaintiff was unable to perform prolonged keyboarding and should not perform any repetitive gripping/grasping activities or activities involving repetitive flexion/extension of the wrists. Dr. Zaris also opined that Plaintiff's incapacity was permanent. The ALJ gave Dr. Zaris's opinions concerning Plaintiff's functional limitations "little weight" because Plaintiff subsequently performed substantial gainful activity and the limitations predated the alleged onset date by a number of years. *See id.* at 35.

The ALJ noted that x-rays of Plaintiff's left hip in December 2011 were negative. *See id.* at 35, 296. The ALJ also noted that treatment notes from 2012 show that Plaintiff's hypertension was controlled, her hyperlipidemia was uncontrolled, and she had a history of parathyroid disease. *See id.* at 35, 318, 320.

On September 4, 2012, Malcolm Horne, Jr., M.D., performed a consultative internal medicine examination. *See id.* at 35-36, 299-302. Plaintiff's chief complaints were carpal tunnel syndrome, neck pain, and hypertension. Dr. Horne noted that Plaintiff reported pain and numbness in the bilateral hands and fingers and that she

took aspirin for hand and wrist pain. Dr. Horne noted that Plaintiff reported no history of cervical spine surgery or injections, but she reported that she sometimes took aspirin for neck pain. And Dr. Horne noted that Plaintiff reported no history of chest pain or unusual headaches or shortness of breath. Dr. Horne's examination showed that Plaintiff was 5′ 3″ tall, weighed 210 pounds, and her blood pressure was 145/86. Dr. Horne noted limitation in the range of motion in the neck but no associated tenderness. During his neurological examination, Dr. Horne noted that Plaintiff reported slightly diminished sensation in the fingers of both hands. Her grip strength was 3/5 in both hands, though very slightly stronger on the left. Dr. Horne added "[h]owever, examination indicated that effort was limited on both sides." Dr. Horne reported that x-rays of Plaintiff's cervical spine were normal. Dr. Horne's diagnosis was a history of bilateral carpal tunnel syndrome with some residual numbness in the digits of both hands but with no evidence of significant muscle weakness; bilateral wrist pain, likely due to arthritis; benign essential hypertension; chronic neck pain, likely due to degenerative joint disease in the cervical spine; and obesity.

Dr. Horne did not give an opinion as to Plaintiff's RFC, but the ALJ gave "some weight" to Dr. Horne's observation that Plaintiff showed limited effort in the upper extremity testing. The ALJ observed that consulting psychological examiner Barbara Brucken, Ph.D., also reported that Plaintiff appeared to exert reduced effort during the mental status examination. *See id.* at 28, 32, 360.

On August 6, 2014, Jelani Ingram, M.D., performed a consultative physical examination. *See id.* at 36, 327-34. Plaintiff complained of upper extremity pain and

rated her pain as 10/10 on the pain scale. She also complained of hypertension with headaches and admitted to checking her blood pressure only sporadically. Plaintiff also reported a recent diagnosis of diabetes. Dr. Ingram's examination showed a surgical scar on Plaintiff's left wrist. She had mildly diminished grip strength in the left wrist, but no other abnormalities of the wrist. There was no tenderness to palpation of the upper extremities. Plaintiff had normal range of motion in her back. The musculoskeletal examination in general revealed normal symmetry, tone, strength, and range of motion and, in particular, Plaintiff had a full range of motion in the wrists, thumb joints, shoulders, and neck. Her gait was with normal limits. X-rays of Plaintiff's left hand were normal. Dr. Ingram's diagnoses were carpal tunnel syndrome, benign essential hypertension, and uncomplicated type II diabetes.

Dr. Ingram opined that Plaintiff was limited to jobs that did not involve fine motor skills or typing. Dr. Ingram further opined that Plaintiff's ability to sit was unlimited; Plaintiff could stand/walk without limitation; and Plaintiff could lift and carry objects weighing up to 20 pounds with the left arm. And Dr. Ingram opined that Plaintiff's sensation was normal, but her grip strength was decreased in the left wrist although her reaching was unaffected. Dr. Ingraham concluded that Plaintiff's overall general health was below average secondary to hypertension, diabetes (possibly neuropathy), and carpal tunnel syndrome.

The ALJ gave Dr. Ingram's opinions regarding Plaintiff's ability to lift and carry, sit, stand, and walk "great weight" and found that those findings were consistent with the ALJ's RFC finding and the medical record as a whole. But the ALJ gave Dr.

Ingram's opinions and assessments relating to upper extremity limitations and functioning "little weight" because she found that those opinions were not supported by the mild and otherwise benign findings Dr. Ingram reported on physical examination of Plaintiff's bilateral upper extremities or by other objective medical evidence, including that from Plaintiff's treating physician. The ALJ explained that, in short, she gave great weight to Dr. Ingram's examination findings, but little weight to Dr. Ingram's assessments regarding the claimant's upper extremity functioning. *See id.* at 36.

On September 3, 2014, treating physician Jill Waggoner, M.D., completed a Residual Functional Capacity Form. *See id.* at 37, 338-43. Dr. Waggoner stated that Plaintiff had diabetes, hyperlipidemia, hypertension, carpal tunnel syndrome, and parathyroid disease. Dr. Waggoner opined that Plaintiff could stand two to three hours and could sit two to three hours in an eight-hour period; needed to lie down during the day due to shortness of breath, chest pain, and poor vision; could walk non-stop for just 50 feet; could rarely (0 to 30% of the time) reach down or above the shoulders or carefully handle objects or handle with the fingers; could lift and carry less than five pounds regularly, daily, and during an eight-hour workday; and should not bend, squat, kneel, or turn any part of her body. Dr. Waggoner stated that Plaintiff had "bodily" pain that was constant, rated at six to seven on a ten-point scale, due to diabetes. Dr. Waggoner further opined that Plaintiff could never return to previous work, but might be able to work from home. The ALJ noted that Dr. Waggoner referenced attached records in support of her opinion, but the one attached record,

which was dated September 11, 2014, mentioned no specific positive medical signs or findings. Instead, it included a medication list showing medications typically prescribed for hypertension, hyperlipidemia;, and diabetes, but not medication for pain. *See id.* at 37. Dr. Waggoner also noted that Plaintiff smoked two packs of cigarettes a day. *See id.* at 37, 413.

The ALJ gave Dr. Waggoner's opinions "little weight" because they were unsupported by Dr. Waggoner's own records, including those attached to the medical assessments and more recent progress notes, or other medical evidence of record. *See id.* at 37. The ALJ explained that sometimes Dr. Waggoner's statements and opinions were markedly inconsistent with other evidence. For example, the ALJ explained, Dr. Waggoner opined that due in part to shortness of breath, Plaintiff needed to lie down during the day, but Plaintiff has consistently denied shortness of breath and even Dr. Waggoner noted that an echocardiogram had been normal. The ALJ also explained that the reported source of Plaintiff's pain—diabetes—is without foundation, especially in light of the apparent non-use of any pain medication and in the absence of laboratory studies to confirm the existence of neuropathy. The ALJ observed that although Dr. Waggoner opined Plaintiff could walk just 50 feet, two weeks later Plaintiff told Yong He, M.D., that she had no difficulty with ambulation. *See id.* at 37, 353. And in August 2014, Dr. Waggoner instructed Plaintiff to get regular exercise—at least 150 minutes per week of moderate intensity activity, such as brisk walking. *See id.* at 37, 378. The ALJ also noted that in September 2015, Dr. Waggoner reported an

entirely normal review of systems and an entirely normal physical examination, apart from obesity. *See id.* at 37, 382-84.

On September 24, 2014, treating physician Dr. He reported that Plaintiff reported neck pain and a physical examination showed tenderness at the C5-6-7 spines. Dr. He concluded that cervical disc disease with radiculopathy "needs to be excluded" by laboratory testing. *See id.* at 38, 353-54.

On September 25, 2015, Plaintiff saw Dr. Waggoner for hip pain after a fall at the movies a week earlier. Dr. Waggoner prescribed Meloxicam and Tylenol #3 and administered a back injection. *See id.* at 37, 363-67.

On February 16, 2016, Plaintiff saw Dr. Waggoner complaining about cold symptoms, including fatigue and headache. Dr. Waggoner's examination showed that Plaintiff weighed 226 pounds, her blood pressure was 112/7, and physical examination was normal. Dr. Waggoner's diagnoses were bronchitis and a BMI of 38.9. *See id.* at 38, 424-28.

On April 14, 2016, Plaintiff saw treating physician Adeola Darden, M.D., complaining of left foot pain. Plaintiff's physical examination was normal aprat from mild pain with range of motion of the left foot, but her gait was normal. Dr. Darden's diagnosis was left foot pain. *See id.* at 38, 419-22.

On May 2, 2016, Plaintiff saw Dr. He complaining of carpal tunnel syndrome, neck pain, and left leg and foot pain. Dr. He noted that Plaintiff was not wearing a prescribed wrist splint. *See id.* at 38, 400. Because of Plaintiff's continuing complaints

of back pain, Dr. He ordered an MRI of Plaintiff's lumbar spine. *See id.* Dr. He's diagnosis was lumbar disc prolapse with radiculopathy. Dr. He advised Plaintiff to continue ibuprofen as needed for pain control. *See id.* at 38, 399.

A MRI of Plaintiff's lumbar spine on May 10, 2016, showed mild levoconvex curvature, mild facet arthrosis at L3-4 and moderate facet arthrosis at L4-5, some disc desiccation, mild facet hypertrophy, and mild posterior annular fissuring at L5-S-1. *See id.* at 38, 409. A MRI of Plaintiff's cervical spine on June 13, 2016 showed degenerative disc disease changes at C4-7 without spinal canal stenosis or neural foraminal narrowing and with mild right ventral cord flattening at C4-5. *See id.* at 38, 407.

On August 30, 2016, Plaintiff saw Dr. Waggoner for a follow-up visit for depression. Dr. Waggoner noted that Plaintiff did not present with anxious or fearful thoughts, depressed mood, diminished interest or fatigue. A review of systems was negative except for Plaintiff being post-menopausal. A physical examination was normal except for obesity, with a BMI of 41.66. Dr. Waggoner advised Plaintiff to exercise 30 minutes daily. *See id.* at 38, 411-17.

The ALJ found that there was nothing in the generally mild or moderate findings on the MRI scans or in Dr. Waggoner's subsequent progress notes to warrant limitations greater than those found in the ALJ's RFC. *See id.* at 38.

The ALJ also found that Plaintiff's subjective complaints of pain were not credible. According to the ALJ, although Plaintiff complained of 10/10 pain in her hands and wrists, she has taken no prescription pain medication for carpel tunnel

syndrome. Also, she has not worn a hand/wrist brace as instructed, and she has had little ongoing hand/wrist treatment. And, although Plaintiff complains of back and neck pain, and although recent MRI scans of the spine show some abnormalities, Plaintiff has had only conservative, sporadic treatment. After the MRI scans, Plaintiff did not mention any spinal issues to Dr. Waggoner, and Dr. Waggoner's physical examination was normal except for obesity. Lastly, although Plaintiff alleges depressive symptoms, she has had little sustained mental health treatment. *See id.* at 38.

The ALJ noted, again, that two examiners—Dr. Brucken and Dr. Horne—reported issues regarding Plaintiff's reduced efforts on examination. The ALJ also noted that although Plaintiff does not allege disability prior to 2014, she had no earnings in 2013 and minimal earnings in 2012. *See id.* at 38-39, 196-97. Based on the paucity of work activity in 2012 and 2013, the ALJ questioned why Plaintiff was not working much, if at all, in these two years given her admission that disability did not begin until 2014. *See id.* at 39.

The ALJ stated that her RFC finding was based on all of the evidence. The ALJ explained that the limitation to work of light exertion takes into consideration all of Plaintiff's physical impairments, most notably the disorders of the cervical and lumbar spine and diabetes, both of which could reasonably be expected to be exacerbated by obesity. The ALJ further explained that the limitation to work of light exertion and to the postural activities described in his RFC finding were supported by: (1) Dr. Ingram's findings; (2) the generally normal physical examination findings reported by Dr.

Waggoner, Plaintiff's treating physician, who encouraged Plaintiff exercise; (3) Plaintiff's minimal use of pain medication; and (4) Plaintiff's history since the alleged onset date of only conservative treatment. The ALJ further explained that the RFC's upper extremity limitations adequately accommodate Plaintiff's bilateral carpal tunnel syndrome, for which Plaintiff had minimal treatment recently. And the ALJ noted that Plaintiff had not been wearing a hand/wrist splint as instructed. The ALJ further explained that the limitation to no climbing of ladders, ropes, or scaffolds was included to accommodate Plaintiff's obesity and hypertension. The limitation to detailed tasks was supported by the relative paucity of aggressive mental health treatment and Plaintiff's denial of depressive symptoms. *See id.* at 39.

In addition to the discussion of opinion evidence recounted above, the ALJ stated, without discussion, that she gave "some" weight to the opinions of the State agency medical consultants who, at the reconsideration level, found no mental or other non-exertional limitations. *See id.* at 39, 103-14.

II.  The ALJ's RFC finding is supported by substantial evidence.

First, contrary to Plaintiff's contention, a claimant's subjective complaints of pain must be supported by objective medical evidence. *See Ripley*, 67 F.3d at 556; *Harrell v. Brown*, 862 F2d 471, 481 (5th Cir. 1988) ("The Act, regulations and case law mandate that the Secretary require that subjective complaints be corroborated, at least in part, by objective medical findings."); 42 U.S.C. § 423(d)(5)(A).

Here, the ALJ found that Plaintiff's "allegations as to the intensity, persistence, and limiting effects of pain are inconsistent with the medical record of evidence." Dkt.

No. 12-1 at 38. The ALJ then explained her decision, giving examples of contradictory evidence concerning Plaintiff's pain. *See id.* The ALJ stated that although Plaintiff reported that the pain in her hands and wrists was the most severe pain possible, she had taken no prescription medications for carpal tunnel syndrome. The use of only over-the-counter pain medication supports an adverse credibility finding concerning allegations of pain. *See Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Escalante v. Colvin* No. 3:14-cv-641-G-BH, 2015 WL 1443000, at *13 (N.D. Tex. March 31, 2015). The ALJ also stated that Plaintiff had not been wearing prescribed hand/wrist braces as instructed. A claimant is not entitled to disability benefits if she fails to follow her physician's treatment plan. *See Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1990) (holding Plaintiff was not entitled to recover benefits because he failed to follow the treatment prescribed by his physicians since he was not wearing a prescribed back brace). And the ALJ stated that Plaintiff had little ongoing treatment for her wrists and hands. The failure to seek a level of treatment commensurate with the alleged severity of the disability supports a finding that the record does not support Plaintiff's allegations of pain. *See Thibodeaux v. Astrue,* 324 F. App'x 440, 443 (5th Cir. 2009). The ALJ then addressed Plaintiff's allegations of back and neck pain. The ALJ acknowledged that recent MRI scans of the spin showed some abnormalities. But, the ALJ explained, Plaintiff had only conservative treatment, and that treatment had been sporadic. And, after the MRI scans, Plaintiff did not mention any spinal issues to her treating physician and the treating physician's physical examination was normal except for obesity.

The ALJ has discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). Here, the ALJ gave due consideration to Plaintiff's reports of pain and the ALJ's credibility determination is supported by substantial evidence.

Next, Plaintiff accuses the ALJ of "playing doctor" and "picking and choosing" only the evidence of record and portions of medical opinions that best supported the ALJ's RFC finding while disregarding treating source opinions regarding restrictions.

The RFC determination is solely the ALJ's responsibility, *see Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012), and the ALJ must consider all relevant medical and other evidence in making the RFC determination, *see* 20 C.F.R. § 404.1545(a)(3); SSR 96-5, 1996 WL 374183, at *5. But the ALJ cannot "pick and choose" only the evidence that supports her position. *See Loza v. Apfel*, 219 F.3d 378, 393–94 (5th Cir. 2000). Nor may the ALJ impermissibly rely on her own lay opinion, derived from her interpretation of the medical evidence and not that of a medical expert, to determine the effects of Plaintiff's physical impairments on Plaintiff's ability to work. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (ALJs "must be careful not to succumb to the temptation to play doctor" or make their own independent medical assessments.) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

Plaintiff does not identify the medical evidence or opinion that she alleges the ALJ failed to consider, except for her assertion that the ALJ disregarded the opinion of Dr. Ingram, a consultative examining physician, that Plaintiff's functional ability is limited to work that does not involve fine motor skills or typing. *See* Dkt. No. 12-1 at 36, 333. But the ALJ acknowledged this opinion, stating that "Dr. Ingram opined that the claimant was limited to jobs that did not involve fine motor skills or typing." *See id.* at 36.The ALJ gave this opinion "little weight" because it was "not supported by mild and otherwise benign findings that Dr. Ingram reported on physical examination of the claimant's bilateral upper extremities" or other medical evidence, including that from Dr. Waggoner, Plaintiff's treating physician. *See id.*

Dr. Waggoner opined that Plaintiff could carefully handle objects or handle with the fingers no more than 30% of the time. *See id.* at 37, 340. The ALJ did not mention this portion of Dr. Waggoner's opinion when she explained why she gave Dr. Waggoner's opinion "little weight." *See id.* at 37.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan*, 38 F.3d at 237. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez*, 64 F.3d at 175-76 (citing 20

C.F.R. § 404.1527(c)(2) ). And "[t]he opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

But "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion" and when good cause is shown. *Id.* at 455. An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

20 C.F.R. § 404.1527(c)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that the opinion is not entitled to 'controlling weight.'" *Id.* at 455-456 (internal quotations omitted). Specifically, the ALJ must consider: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Id.* at 455; 20 C.F.R. § 404.1527(c)(2).

But, in decisions construing *Newton v. Apfel*, the United States Court of Appeals for the Fifth Circuit has explained that "[t]he Newton court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 Fed. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of

examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

Here, the ALJ considered the findings of Dr. He, a treating physician, who noted that Plaintiff was not wearing prescribed wrist splints. *See* Dkt. No. 12-1- at 404-06. Dr. He did not note any manipulative limitations. *See id.* The ALJ also noted that Dr. Horne, a consultative examining physician, found that Plaintiff had slightly diminished sensation the fingers of both hands and "3/5" grip strength bilaterally that was slightly stronger on the left. The ALJ also noted Dr. Horne's conclusion that Plaintiff gave a limited effort, on both sides, during testing. An ALJ may properly consider instances of poor motivation as clouding the validity of examinations. *See White v. Astrue*, No. 4:08-cs-415-Y, 2009 WL 763064, at *12 (N.D. Tex. March 23, 2009) (holding that incomplete effort, inconsistent performance, and exaggerated responses weigh against the claimant's credibility). Based on Dr. Horne's findings, State agency medical consultant Yvonne Post, D.O., concluded that Plaintiff was limited to frequent, fine and gross manipulation due to her carpal tunnel syndrome. *See* Dkt. No. 12-1 at 39, 307. The ALJ gave Dr. Post's opinion "some weight."

The Court concludes that the ALJ showed good cause for giving Dr. Waggoner's opinion concerning her manipulative limitations "little weight," and, because there was competing medical evidence, the ALJ was not required to consider the 20 C.F.R. § 404.1527(c)(2) factors.

But even if the ALJ erred by not including more restrictive manipulative restrictions, Plaintiff has failed to show that she was prejudiced. According to the Dictionary of Occupational Titles, both of the jobs that the ALJ found Plaintiff could perform require no more than occasional manipulative actions. "Occasional" is defined as up to 1/3 of the time. *See* DICOT 195.367-010 (G.P.O.), 1991 WL 671595 (case aide) and 249.367-082, 1991 WL 672339 (park aide) (4th ed., revised 1991).

Accordingly, for all of these reasons, the Court finds that the ALJ's RFC finding is supported by substantial evidence.

### Conclusion

The hearing decision is affirmed in all respects.

DATED: August 27, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE